## SUGGS v. STATE.

Ohio Appeals, 6th Dist., Wood Co.

No. 431. Decided Apr. 9, 1928.

**First Publication of This Opinion.**

Syllabus by Editorial Staff.

**58. AIDERS, ABETTERS AND ACCOMPLICES—193. Burglary and Larceny—480. Evidence.**

Evidence that accused visited house of friend, from which he and friend started out at midnight to "get" chickens, that accused drove automobile and waited while friend went and broke into chicken coop and stole chickens, held sufficient to warrant conviction.

Error to Common Pleas.

Judgment affirmed.

Geo. A. Cheney, Bowling Green, for Suggs.

Wm. B. James, Pros. Atty., Bowling Green, for State.

**FULL TEXT.**

RICHARDS, J.

James Suggs was jointly indicted with Wil-

liam Bronson on a charge of burglary and larceny. Bronson pleaded guilty and Suggs not guilty, but on the trial of the case Suggs was found guilty as charged in the indictment and sentenced accordingly.

The charge in the indictment involved the breaking and entering of a certain chicken coop in the night time and stealing therefrom four chickens. It is earnestly insisted that the evidence is wholly insufficient to justify a conviction of Suggs of burglary and larceny. Indeed it is said in the brief that there is not a scintilla of evidence from the lips of any witness that Suggs ever got out of his automobile on the evening in question or ever entered or attempted to enter or break into the chicken coop of the complaining witness, and there is no testimony from any witness that he knew that Bronson was going out on that evening to burglarize chicken coops and steal chickens, and it is argued also that there is no testimony that the plaintiff and Bronson at any time conspired together to burglarize chicken coops and steal chickens. It is quite true, as appears from the evidence, that Suggs did not get out of the automobile at the time the burglary was committed and that he did not enter or attempt to break and enter the chicken coop in question, but those facts shed little light upon the question of his guilt or innocence.

Both Bronson and Suggs lived in the city of Toledo. The record discloses that on the evening of December 29, 1927, Suggs, who is a colored man, visited at the home of Bronson, who is also a colored man, arriving at ten o'clock at night and staying there, as he says, until midnight or one o'clock in the morning. During that time Bronson told Suggs that he was going out to get some chickens and bring them home, and Suggs agreed to furnish an automobile and go with him and drive the car. Bronson states that he had no money. They got into the car at about midnight or one hour thereafter, according to their testimony, and drove across the river into East Toledo and thence up near Walbridge and onto the grounds of the Hocking Valley Railroad Company, where Bronson told Suggs he was to meet a friend of his named Young and get some chickens. Bronson got out of the car at that place and started off into the dark, soon returning with Young who had two chickens, one of them alive and one with its head off. These chickens were put into a sack and placed in the car. Young informed them that he knew where there was a man, residing near there, who had chickens. Suggs then drove the car as directed to a place about fifteen rods from the residence of the complaining witness, Fred J. Isch, where he stopped the car and remained in it. Bronson told Suggs to wait for him there and that if he did not return he would see him the next day in Toledo. Young and Bronson went over to the chicken coop where Isch kept many chickens and pried the door open and secured four chickens. Isch, the owner of both the premises and the chickens, had an electric alarm attached to the chicken coop door and when it was pried open the alarm awakened him and his son, and they dressed, secured a gun, and came down stairs. The evidence shows beyond question that this was about three o'clock in the morning. Bronson states that he carried the four chickens over to the car and handed them to Suggs, who was waiting, and told him he would be back in a few minutes. Suggs stated, "I'll wait for you." The chickens

had been placed in a sack and were put in the car with the other sack containing the two chickens obtained earlier in the evening. When Bronson returned toward the coop, evidently after more chickens, instead of finding his friend Young, he met Isch with a shotgun, and was commanded to throw up his hands and was captured by Isch and his son. Suggs, on finding that Bronson did not return, drove the car back to Toledo. The following morning, about eight or eight-thirty o'clock, Suggs returned in the car which he had driven the night before, to a point about fifteen rods from the Isch residence, where he got out and picked up the two sacks of chickens and placed them in the car, they having evidently been thrown into the ditch the night before. He seems to have been able, with almost unerring instinct, to locate the place where the chickens were. A neighboring farmer saw Suggs place the two sacks in his car, and with a son of the owner of the chickens, followed and captured him.

While Bronson testifies that he told Suggs before they started that he was going out to "get" some chickens, Suggs himself says that Bronson stated he was going out to buy some chickens. In view of the time of the night and the circumstances under which the chickens were obtained, the jury was perfectly justified in finding that the intention was to get the chickens without buying them and to get them feloniously, particularly in view of the fact that Bronson stated he had no money. The jury could scarcely be blamed for finding that these men did not start out after midnight, and under the conditions shown by the evidence, for the purpose of honestly obtaining chickens. Neither could they be justly blamed for finding that the circumstances showed full knowledge on the part of Suggs of the criminal enterprise. The evidence shows beyond any reasonable doubt that Suggs aided and abetted that enterprise and that the plan adopted of "getting" chickens was a plan to get them unlawfully.

We find no errors of law in the record to the prejudice of the plaintiff in error.

(Williams and Lloyd, JJ., concur.)